STATE ex rel. CITY OF ST. PAUL v. DISTRICT COURT OF RAMSEY
COUNTY and Another.[1]

November 15, 1901.

Nos. 12,823—(24).

### City Market—Constitution.

That part of Laws 1899, c. 292, § 1, which provides that "whenever
the common council in any city of this state having at the last preced-
ing state census more than fifty thousand (50,000) inhabitants shall con-
sider it necessary to procure grounds for a public market, such com-
mon council shall appoint a committee," is not obnoxious to the pro-
visions of article 4, § 33, of the state constitution, as amended in 1892.
It is not special legislation.

### State Census.

The state census which is to govern in proceedings under that law
is the one last preceding in point of time the action of the city council.

### Population—Rule of Evidence.

The grant of power to the legislature to pass the law in question
carried with it impliedly and of necessity the right to prescribe any
reasonable rule of evidence or method for determining whether or not
a municipality has the requisite population. The rule or method pre-
scribed in the law in question is a reasonable exercise of the power.

Writ of certiorari issued from the supreme court to the district
court for Ramsey county and Hon. William Louis Kelly, one of
the judges thereof, to review a judgment of said court in proceed-
ings under Laws 1899, c. 292, to condemn land for a public market.
Judgment reversed.

*James E. Markham* and *Franklin H. Griggs,* for relator.
*Wilson G. Crosby,* for respondents.

COLLINS, J.

In a proceeding under Laws 1899, c. 292, to condemn lands for
a public market in the city of St. Paul, the material question
raised is whether the law is obnoxious to article 4, section 33, of the
state constitution, as amended in 1892. The act itself provides:

[1] Reported in 87 N. W. 942.

"Section 1. Whenever the common council in any city of this state having at the last preceding state census more than fifty thousand (50,000) inhabitants shall consider it necessary to procure grounds for a public market, such common council shall appoint a committee," etc.

It is argued by respondents that this act is in violation of the constitutional provisions, because limited in its application to cities which had more than fifty thousand inhabitants at the time of the state census in 1895, the census last preceding the passage of the law. The natural and obvious construction, urges counsel, makes the words "last preceding" refer to the passage of the law, and not to a later time. If this were the proper construction, there would be no doubt about the result of this case. The law would be special legislation, and within the inhibition. But we cannot construe the statute in this way. The section provides that "whenever"—that is, at any time in the future—the council of a city having more than fifty thousand inhabitants, according to the "last preceding" state census, shall deem it necessary, proceedings may be had to secure a site for a public market, and this expression is to be construed as a whole. When construing the act, we must give consideration to all of the language used, especially to such words as are designed to be controlling, and continually bear in mind that it is the duty of a court to uphold the constitutionality of an act, if it can be done in any reasonable way, or by any fair construction of the language used.

In this particular case the governing words are "whenever" and "preceding." Neither can be ignored, and this would have to be done in order to say that the state census of 1895, taken four years before the enactment, was the last preceding census mentioned, and the only one by which to ascertain the qualification of any particular municipality to proceed under the law. Upon the other hand, it is a fair construction, and naturally indicative, we think, of the intent of the legislature, to hold that the words "last preceding" refer and relate not to the census of 1895, but to that state census which immediately precedes in point of time the action of the council "whenever" it deems it necessary to proceed. This construction gives life to the law, while the other renders it

invalid. It is consistent with the presumption that the legislature intended to enact a statute which could not be declared as opposed to the fundamental law, while the construction placed upon the section by the trial court convicts the legislature of deliberately excluding from the operation of the law all cities which were not eligible to the fifty thousand population class when it was enacted in 1899, notwithstanding the well-known decisions previously rendered by this court wherein it had been declared that a class, when fixed, must be an open one, into which other cities may come as their inhabitants increase in numbers.

An examination of the two cases cited by counsel—Coutieri v. Mayor, 44 N. J. L. 58, and State v. Mitchell, 31 Oh. St. 592, 595— will show that they have no bearing upon the case at bar. Reference has been made to Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623. Section 1 of the act there considered provided that any city, "at any time having a population of more than fifty thousand according to the last officially promulgated state census" might have the benefits thereof. But counsel seems to have assumed that the language above quoted was construed as confining the operation of that law to cities having a population of more than fifty thousand according to the state census which immediately preceded its enactment. This assumption is unfounded. By several subsequent provisions that act was expressly limited in its operation to cities having at the time of its enactment the specified population, and this was expressly stated in the opinion.

It is further contended that the legislature had no authority or power to prescribe any rule of evidence or method by which the right of the city to avail itself of the benefits of the act may or can be determined, and therefore the act is invalid. We think the grant of power to the legislature to pass the law, found in the constitution, carried with it impliedly and of necessity the right to prescribe any reasonable rule or method for determining whether or not a municipality which desired to act exceeded fifty thousand in population. Within certain limits, the legislature could enact a rule of evidence whereby it might be ascertained

whether a city had the prescribed number of people, and had, as a matter of fact, reached the open class provided for. There must be some rule or method by or tribunal in which the fact is to be ascertained and determined. If the statute is silent, as is the constitutional amendment, the ultimate decision of the fact would necessarily rest with the courts, and no one would question their power to adopt a rule, and to rely and act upon a state census required by the state constitution to be taken every ten years, or upon a federal census required by the federal constitution to be taken every ten years, the result being an alternating census, state or federal, every five years.

Why, then, cannot the legislature prescribe a rule and establish a method or manner whereby the population of the municipalities to be affected may be accurately determined? No constitutional provision stands in the way, and the need of such legislation is apparent. If it be a matter for legislation, why cannot the state census be relied upon as the proper standard, or the federal census, or both? Or what would prevent the legislature from conferring authority to determine the fact upon the state auditor, or upon any other state officer, without reference to either census? Surely, any reasonable rule of evidence or method of ascertainment may be prescribed by the legislature whereby the right of a city to proceed under the law may be determined. That found in the law in question is a proper exercise of the legislative power.

Our conclusion is that the judgment must be reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

Judgment reversed.