## RAY MOOSE v. WILLIAM VESEY AND OTHERS.[1]

November 14, 1947.

No. 34,472.

[1]Reported in 29 N. W. (2d) 649.

*A. D. Bornemann,* for appellant.
*Lyman A. Brink,* for respondents.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for judgment *non obstante* or a new trial.

Plaintiff, who is the owner of the southeast quarter of section 35, township of Svea, in Kittson county, alleges in his complaint that defendants wantonly and maliciously destroyed his fence, to his damage in the sum of $100, and he requests treble damages. Along the southern boundary of plaintiff's land, which coincides with the sec-

tion line and also with the common boundary between Kittson and Marshall counties, is a drainage ditch and road running east and west, which prior to 1910 was known as judicial ditch No. 3. In that year, however, judicial ditch No. 10 was established, with the old judicial ditch No. 3 incorporated therewith as branch B. By these judicial ditch proceedings, a strip of land six rods wide, con-. sisting of two rods in Kittson county (inclusive of two rods of plaintiff's land along its south boundary) and four rods in Marshall county, was condemned for ditch and road right of way. Along this right of way, the road and ditch were constructed, with the roadbed on the north and the ditch to the south.

Along the roadside, parallel to the southern boundary of his land, plaintiff had a fence, part of which had been erected by Charley Johnson, the former owner, and part of which had been put up by plaintiff himself. In November 1945, this fence was destroyed and removed from the land by defendants Hjalmer Lindblad and Nick Welter (deceased at the time of trial and represented by the administrator of his estate), acting as employes of the township of Svea. The other defendants are William Vesey and George Dahl, who ordered the removal of the fence in their capacity as members of the township board of supervisors. Plaintiff alleges that the fence so removed was located on his land outside of the road right of way, whereas defendants by their answer allege that the fence was located on the road right of way and was removed as the official act of the township board of supervisors in order to facilitate the cutting of weeds and the removal of snow. The trial court instructed the jury that plaintiff could not recover if the fence was located within the road right of way. The jury found for defendants, and this appeal followed.

Before proceeding to the fundamental issues as to whether the verdict is sustained by the evidence, we shall dispose of a preliminary motion before this court, as well as certain other minor issues.

■ In the trial below, the entire file pertaining to the establishment of judicial ditch No. 10 was offered and received in evidence, but no part of the file pertaining to original judicial ditch No. 3

was offered or received. In fact, the entire file of judicial ditch No. 3 was at all times wholly absent from the courtroom and was in the custody of the clerk of court of the adjoining county of Marshall. In connection with this appeal, the trial court ordered that the plat found in the file of judicial ditch No. 3 be transmitted to this court to aid in determining whether the jury had correctly ascertained the location of the right of way. The trial court in its memorandum, stated that, although such plat in the file of judicial ditch No. 3 was not physically present at the trial, it was in effect a part of the evidence in the case, in that it properly belonged to the file of judicial ditch No. 10, since original ditch No. 3 was incorporated as part of ditch No. 10 when the latter was established. We do not agree. Plaintiff's preliminary motion for an order striking such plat from the records of this court, as well as any other papers pertaining to the file of judicial ditch No. 3, is granted. An appeal must be decided solely upon the evidence actually produced in the court below, and any plat or instrument not so produced and received in evidence is a mere fugitive paper, which may not be considered by the appellate court, even though its intended use is solely for an illustrative purpose.[2] As an appellate court, we are confined to the record before us. Lindgren v. Towns of Algoma and Norland, 187 Minn. 31, 33, 244 N. W. 70, 71.

▪ Plaintiff's action was the only jury case for trial at the March 1946 term, and, in order to save the taxpayers the expense of calling a jury for only one case, the trial court, on its own motion, continued the case to the December term. Plaintiff contends that this continuance was an abuse of discretion and was prejudicial to him, in that Nick Welter had died between March and December 1946,

---

[2]Milwaukee Corrugating Co. v. Industrial Comm. 197 Wis. 414, 222 N. W. 251; Naus v. Chicago & M. Elec. Ry. Co. 185 Wis. 178, 201 N. W. 281; Hamilton v. City of Leon (Iowa) 164 N. W. 633; Hoffman v. Silverthorn, 137 Mich. 60, 100 N. W. 183; In re Fahnestock's Estate, 61 S. D. 24, 245 N. W. 899; 3 Am. Jur., Appeal and Error, § 835; Note, 9 Ann. Cas. 952; see, Peterson v. Wolf, 1 Neb. (Unof.) 242, 95 N. W. 332, in re writings used as a basis for the examination of witnesses without objection and which are treated by both parties in evidence.

thereby depriving plaintiff of his right to cross-examine Welter under the statute. If plaintiff has been prejudiced, what is to be accomplished by a new trial? Welter will not thereby be brought back to life. The supreme court will not reverse an order of the trial court, although it is technically wrong, if no substantial benefit is to be accomplished by a reversal. State ex rel. Burrows v. Truax, 139 Minn. 313, 166 N. W. 339; 1 Dunnell, Dig. & Supp. § 416. We also note that plaintiff has made no showing as to whether Welter, had the case been tried while he was living, would have given any testimony bearing upon the vital issue involved herein, namely, the location of the fence with respect to the road right of way.

■ Lyman A. Brink, attorney for defendants, was also county attorney of Kittson county. Prior to the commencement of this action, plaintiff had consulted Brink in his capacity as county attorney about instigating a criminal prosecution against those who had destroyed his fence. No such action was ever begun. At the beginning of the trial below, plaintiff moved to disqualify Brink as attorney for defendants on the ground that to permit him to serve as defendants' attorney after plaintiff had discussed the facts with him as county attorney constituted a breach of the attorney-client relationship and gave defendants an unfair advantage. The motion was denied, and plaintiff assigns this as error. This is not a disciplinary proceeding, and the question is not whether Brink's conduct was improper, but whether, assuming (without deciding) that it was, plaintiff was prejudiced thereby.

"* * * A new trial upon the ground of misconduct is not granted as a disciplinary measure but because injustice has been done." Hammel v. Feigh, 143 Minn. 115, 125, 173 N. W. 570, 574. See, Romann v. Bender, 190 Minn. 419, 252 N. W. 80.

"* * * the granting of a new trial on such grounds is not a disciplinary measure * * *, but a vehicle for the correction of wrongs in practice and the prevention of injustice, a means of restoring the status quo ante where, by his counsel's misconduct, the successful litigant has gained an undue advantage and his defeated opponent has suffered an undeserved injury." Bowers, Judicial Dis-

cretion of Trial Courts, § 522. See, Hein v. Waterloo, C. F. & N. Ry. Co. 180 Iowa 1225, 162 N. W. 772.

We cannot say that the trial court abused its discretion in denying the motion for the disqualification of Brink, in the absence of a showing by plaintiff that he was thereby prejudiced.

■ Plaintiff also assigns as error the denial of his motion for a mistrial, made at the close of the case, on the ground that two of the jurors were members of the board of county commissioners. Plaintiff knew of the official status of these jurors when he accepted them. He also knew, or should have known, that a county employe such as the county surveyor or his assistant might be called to testify as to the location of a road right of way along the county line. It is the general rule that no objection can be taken to any incompetency in a juror (existing at the time he was called) after he is accepted and sworn, if the fact was known to the party and he was silent; and, even if the incompetency is not known but is discovered later, a defeated litigant is not entitled as a matter of right to have a mistrial declared or a verdict set aside. "In such a case there may be an appeal to the discretion of the trial court, whose duty it is to consider the nature of the objection to the juror, the diligence exercised to ascertain it in due time, and the other circumstances of the case." State v. Boice, 157 Minn. 374, 376, 196 N. W. 483; State v. Durnam, 73 Minn. 150, 75 N. W. 1127. Plaintiff's motion was addressed to the sound discretion of the trial court, and we find no abuse of discretion.

■ Plaintiff assigns as error the reception in evidence, over his objection that it was incompetent and not the best evidence, of a copy of an original map or plat prepared in 1940 by Stanley Erickson, the assistant county engineer of Kittson county, who as a witness identified the plat as an authentic copy of the original in his office and testified that the original was based on field notes he had personally made in making a survey of the premises in connection with a proposed road-improvement program. Erickson further testified that about a year before the trial he had again personally examined the premises and had brought the plat up to date by show-

ing thereon the location of the new fence which plaintiff had built in the meantime. Erickson had personal knowledge of the premises and of the manner in which the plat and the copy were prepared. The copy was competent evidence and was properly received. Hews v. Troiani, 278 Mass. 224, 179 N. E. 622. In Kies v. Warrick, 149 Minn. 177, 180, 182 N. W. 998, 999, we held:

"* * * Where a surveyor testifies to the accuracy of a plat made by him, it is not ordinarily error to receive the plat in evidence, even though it was made from notes which are not in evidence. The sufficiency of the verification is a question addressed to the discretion of the trial judge."

There is no reason why a copy of a plat may not be verified in the same manner. The absence of the assistant engineer's field notes might affect the weight of his testimony, but not the admissibility of the plat. County of Blue Earth v. National Surety Co. 164 Minn. 390, 205 N. W. 277.

We come to the fundamental issue of whether the evidence sustains the verdict that the fence was located on the right of way. We believe it does. The plat prepared by assistant county engineer Erickson gave the jury an accurate view of the premises by showing the location of the fence with relation to the roadbed and the ditch, and also with relation to a certain bull ditch on the north side, which had been constructed prior to original judicial ditch No. 3. Defendant William Vesey, an old-time resident, had been familiar with the road since 1904. He personally recalled when the bull ditches were constructed and the manner in which they were laid out. He testified on cross-examination:

"Q. Mr. Vesey, you said that—you were speaking about section line roads in those days in connection with these bull ditches?

"A. Yes.

"Q. I understood you to testify there was a four-rod road and these bull ditches were located on each side of the section line. The section line would be the center of that, is that right, of this four

rods with a ditch on each side, north and south side, this being an east and west section line?

"A. Yes."

On redirect examination Vesey said:

"Q. You say they would leave four rods between?

"A. That was the understanding; that is, *the ditch itself was on part of the roadway, right at the edge.*" (Italics supplied.)

He also testified that the fence here in question was between the bull ditch and the top of the grade. There was ample testimony to establish the fact that there had been no change in the location of the bull ditches from the time they were constructed, and if the jury believed Vesey's testimony that these ditches were included within the four-rod right of way established along section lines it followed that a fence between the bull ditch and the roadbed was necessarily on the right of way. Erickson's plat also showed the fence as located between the bull ditch and the roadbed. Charley Johnson, who had lived in that locality since 1888 and who was the former owner of plaintiff's land and who had built part of the fence in issue, said that the fence was located on the south side of the bull ditch next to the side of the grade or roadbed. With regard to the portion he had built, Johnson testified:

"Q. Were you ever told to move it or get it off the right of way?

"A. No, nobody told me to move it. I built it temporary so if somebody should go in there and want me to, it was not much expense to move it.

"Q. That's why you made it just a temporary fence?

"A. Ya."

The evidence was in conflict, but, taking into consideration the testimony given by assistant county engineer Erickson, as illustrated by the plat which he had prepared, together with the testimony of Vesey and Johnson, we cannot say that the verdict is not reasonably sustained by the evidence. Difficult as it may have been for the jury to determine the exact location of the section or county

line, there was, nevertheless, sufficient evidence to support a finding that the fence was within the confines of the right of way.

Affirmed.